Nott, J.
delivered the opinion of the Court.
The defend ants in this case are creditors of Thomas Topham, a bankrupt, in England. Since the commission of bankruptcy, and after the property was assigned to the plaintiffs, the defendants procured attachments to be levied on his property in this State: and the question now to be determined is, whether the attaching creditors or the assignees are to be preferred ? The question has been tried on a feigned issue, and a verdict found for the assignees, who were plaintiffs. Whether the persons attaching are really American citizens or British subjects, does not appear. We are bound, therefore, to consider them as American citizens; 'though I am not *284 aware any J ultimate decision of the question. Sed vide 1 Maryl. Rep. 236. It is a question of no inconsiimportance; and if it was now for the first time to be decided, it would not be less difficult than important; and it is due to the counsel on bothsides to say, that the cause has beenargued with learning and ability equal to its merits, and I hope has received from the Court the deliberate consideration which its importance demands. A respect for the laws and judicial decisions of other nations is a cardinal principle with all civilized governments; and a just regard for our national character makes it a duty which we owe to ourselves as well as to our country, to preserve those social and political relations which the comity of nations has established, and which are indispensable to that harmony and friendly intercourse which ought to subsist between them. And I trust it will be found, that, in the decision of the case now under consideration, those principles have not been disregarded, nor the great land-marks, erected by the great men who have gone before us, passed by unnoticed. All laws have for their basis, public policy; and the laws of every country are directed to the peculiar benefit and advantage of that country. They cannot, therefore, have immediate operation within the jurisdiction of another. That they ought to be respected, I have already admitted. But how far they ought to have effect in settling the con- *285 dieting claims of individuals arising under their respective laws, has never yet been determined; and perhaps cannot be with exact precision. The decisions of the English Courts on the jeet, are acknowledged by their own Judges to be confused and contradictory; and if, in settling this question, we should look to the decisions of our own Courts in preference to theirs, if they should be found at variance, it will not be considered a departure from those principles of national hospitality by which we profess to be governed. It will nevertheless be satisfactory to find that the decisions of the American tribunals are supported by the opinions of some of the ablest Judges which have ever adorned the English bench.
The first case brought to our view is the case of Jones, Havard, & Jones, and others, vs. Blanchard & Lewis, decided in this state as early as the year 1785., That case was so precisely similar to this, that we might say, “ Mulato nomine de te fabula narralur and although that decision may not be entitled to the weight and authority of law, it is entitled to more respect than a mere nisi prius decision. It was decided by two Judges, on great deliberation, after full and able argument. It was then held at that early period of our national existence, that an assignment of a bankrupt’s estate in England gave his assignees no lien on his property in this country, and that attaching creditors were entitled to a *286 Preference. In the year 1807, more than twenty years after, the same question arose again in the Circuit Court of the United States, sitting m this and was decided the same way. Bee’s Admiralty Rep. 247, Harrison vs. Sterry, and others. In that case the Judge says, “ The attachment Act of this State is founded on a broad basis, and no Commission of Bankruptcy in England, even before our separation from that country, was ever allowed to interfere with its operation.” And that opinion derives no inconsiderable weight from the consideration, that Judge Bee was one of the Counsel employed in the case of Jones, Havard, & Jones, and others, vs. Blanchard & Lewis. He was an old and experienced lawyer, and well acquainted with the decisions in this state. And from his emphatical manner of expression, we may conclude that he considered the law as settled at that time. It is probable that that has been a leading and governing.case ever since. And where a decision has been made by a competent tribunal, although not of supreme authority, it it has been acted upon tor r / x years, and commonly received and acknowledged as law, it ought not to be departed from un- ' x less it shall be found upon the most mature deliberation to be radically wrong. But this case is not subject to that imputation; for the case of Harrison vs. Sterry, and others, was carried up to the Supreme Court of the United States, and received the support of that court. 5 Cranch, 302. *287 If, therefore, we are to be governed by authority, it might be supposed that higher would not be _ required. In addition to those, are the cases of Taylor vs. Geary, decided in the Supreme Court of Connecticut, at a time when, I believe, that bench was never better filled. Kerby, 313; and Milne vs. Moreton, in the Supreme Court of Pennsylvania, 6 Binney, 353. And as far as the American cases have come to my knowledge, the decisions have been uniform; and these are not the hasty opinions of single Judges, but the deliberate decisions of the Supreme Courts of several states, and of the United States. And if any collision actually exists between the tribunals of the two countries, our own are entitled at least to as high respect as those of England in a question of this sort. But I apprehend that no greater difference of opinion will be found between them on this than might be expected on any question of equal importance and difficulty. But be that as it may, our decisions are not unsupported by high authority from that country. Lord Mansfields&ys, “If after a bankruptcy, and before payment to the assignees, money owing to the bankrupt out of England is attached, bona fide, by regular process, according to the law of the place, the assignees in such case cannot recover the debt. Doug. 170, Le Chevalier vs. Lynch." And further, “ The statutes of bankrupts do not extend to the colonies, or any of the king’s dominions out of England; *288 an(j j-]le assignments unde,r such commissions take place only between the assignees and the bankrupt, but do not affect the rights’of any other creditor. ” Cook's Bankrupt Laws, 243, 4, 347. So far the decisions of the English Courts correspond with,our own.
whore a pain; of law has been com®of ¿mnethough not of supreme authority, la1 an™acqu¡£“d ’VS, “it ought not to be Sr mlich 'umideration.&c.
*288 On the other hand, it is laid down that the assignment of the commissioners vests the property of the bankrupt in the assignees, although they are in a foreign country; (Cullen’s Bankrupt Laws, 184. 243. Lex. Mer. Amer. 520. 4th D. and E. 182. Hunter and Potts. 1 Henry Blackstone, 689. Sill v. Worswick.) But in all these cases the question arose between British subjects, and in their own Courts. In Lex. Mer. Amer. the principle is expressly restricted to « creditors who reside within, and are citizens or subjects of, the state to which the bankrupt belongs, 520.” The case of Sills v. Worswick was an action brought against a creditor in England by the assignees of a bankrupt there, to recover money which he had recovered on an attachment in St. Christopher’s, after the assignment, and which had been remitted to him in England. Lord. Loughborough says, “ the defendant is resident in England, the process was founded on an act done by him in Englnad, and under the aid of the laws in England. It is not, his lordship says, a question whether the bankrupt laws have an operation at St. Christopher’s, but whether they operate at Lancaster,,(England;) «whether a *289 creditor resident in England, subject to the laws of England, shall avail himself of that law ° , # to enable himself to -get possession of a debt from those who are entitled to that debt, and who have the distribution of it for the benefit of all the creditors, and to hold that possession against those creditors.” In that case,- and under those circumstances, it was held that the assignees were entitled to recover. The case of Hunter & Potts, 4th D. and E. 182, was to the same effect. The amount of those decisions is, that it is contrary to the policy of the bankrupt laws of England, that one creditor should by any means get possession of a portion of the bankrupt’s estate to the exclusion of the rest, and that.the money so received shall be for the use and benefit of the whole. But Lord C. J. Eyre strongly combats this principle, even as between British subjects, and speaks of it as a point conceded, that it is a diligence “which all persons wh oare not British subjects may lawfully pursue,” to contravene their bankrupt laws. Again his lordship says, “ you admit that an American might, in this case, have pursued his legal diligence in the Courts of his own country, notwithstanding our bankrupt laws, and you could not have taken the money from him and given it to the assignees.” (Phillips and Hunter, 2d Henry Blackstone, 412) And further says, the decisions authorizing the assignees to recover, even from a British subject, money so received, are bottomed, on,a new in *290 vented legal maxim, that no “ British subject shall be allowed to contravene an act of Parliamerit.” And even Lord Loughborough says, that -j. no means follows from what he has laid down, “ that a commission of bankruptcy has an operation in another country against the laws of that country. Nor does he wish to be understood that a creditor in that country, not subject to the bankrupt laws, having obtained payment of his debt, and afterwards going to England, would be liable to refund that •debt. The cases of Solomons v. Ross, and Jillet and Rutfield v. Deponthieu and Barret, are the strongest that I have found in behalf of the assignees. But these cases are only to be found in the marginal notes of 1 Henry Blackstone, 131, 2, and are so imperfectly reported that little can be inferred from them; and from the manner in which C. J. Eyre speaks of them, it would seem that, he considered them of very doubtful authority. I have now gone through ail the cases which it appears to me necessary to notice in this case, ,and it only remains to draw the conclusions deducible from them. The bankrupt laws of Great Britain are a great systenvof commercial policy. The object of them is, on the one hand, by a direct and speedy operation to distribute the proceeds of a bankrupt’s estate equally among his creditors, according to their respective demands, in such a manner as to do equal justice to them all; and on the other, to *291 relieve an honest but unfortunate debtor from a load which would otherwise hang for ever like a mill-stone about his neck, and to afford him a hope and prospect of acquiring something in future for the support of himself and family; and by whatever means any creditor gets possession of his estate or money, he is considered ¿s having received it for the use and benefit of all. The foundation of this opinion is, that by the assignment all the goods of the bankrupt, ubicuncjue fuerunt, vest immediately in the assignees. And as between the bankrupt and the assignees, and as between British creditors residing and suing there, I am willing to admit the principle. But there is a very obvious distinction between an assignment by the party and one by operation of law. All personal contracts are transitory; all municipal laws are local. The assignment confers an equitable right; it is a power of attorney ad colliquendum, but it vests no legal interest. The assignee may sue in the name of the bankrupt in a foreign country, and receive the money to his own use; but he cannot sue in his own name. (2 Johnson, 342.) And although he may have a legal title in England under the law, it creates no such lien on the property here as will defeat a legal process in this country. This is illustrated by the analogy of the law in other cases. Judgments and executions give a lien on property in England; but they have no binding efficacy beyond their jurisdiction; and a foreign *292 judgment, in marshalling the assets of a deceased person, is considered only as a simple contract. It is triie the personal estate of a person jntestate, must be distributed according to the laws of the country where the deceased belonged, but his debts in a foreign country, must be paid according to the laws of that country. The legal title to his goods at home is also immediately vested in his administrator, but he has no control over his goods abroad. Administration must be granted there, and the debts of the deceased there must be paid, before the administrator will be permitted to pay over the money to his representatives ; otherwise the funds of the deceased (as also those of a bankrupt) might be drawn out of the country for the benefit of the home creditors, to the exclusion of those abroad. I am of opinion that law, justice, and public policy, all combine to give a preference to the attaching creditors. The verdict, therefore, must be set aside.
Hayne, for the motion.
H. A. Desaussure, contra.
The other Judges concurred, except Cheves, J. who gave no opinion, having been concerned in the case.